Filed 10/31/14  In re D.H. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re D.H., a Person Coming Under the Juvenile Court Law. | C075530 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.H.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD233963) |

C.H., mother of the minor D.H., appeals from the juvenile court's dispositional order removing the minor from her custody.  (Welf. & Inst. Code, § 395.)[1]  She contends (1) the juvenile court lacked jurisdiction because she was willing to place the minor with an appropriate caretaker, and (2) the juvenile court's disposition should be reversed

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

because inadequate notice was given to the Indian tribes pursuant to the Indian Child Welfare Act (ICWA). (25 U.S.C. § 1901 et seq.) We conclude (1) the parents' willingness to place the minor with a caretaker is irrelevant to the court's jurisdictional inquiry, and (2) the record exposes no error in the notice sent to the Indian tribes. Therefore, we affirm the juvenile court's order and judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Basis for Jurisdiction

The Sacramento County Department of Health and Human Services (the Department) successfully petitioned the juvenile court, pursuant to section 300, alleging that the minor comes within the jurisdiction of the court because he has or will suffer serious physical harm or illness as a result of his parents' failure or inability to supervise or protect him and because of the parents' inability to provide regular care for him due to their own mental illnesses. Specifically, it was alleged the mother has several mental illnesses that impair her judgment and ability to care for the minor and that have caused her to be involuntarily hospitalized repeatedly. It was also alleged the father, D.S., failed to protect the minor, though he knew or should have known that mother's mental illnesses impaired her ability to care for the minor, and that father's own mental illness impairs his ability to care for the minor.[2]

In support of the petition, the Department presented a jurisdiction and disposition report, which provided the following additional information:

Child Protective Services received a referral from El Dorado County based on a report that mother was behaving bizarrely and erratically: the primary concerns were that mother believed the five-month-old minor was talking to her, and she continued to breastfeed, though she was no longer eating or sleeping, thereby preventing the minor

---

[2] Father is not a party to the instant appeal.

2

from receiving adequate nutrients and from gaining any weight, and she became angry with family members for feeding the minor solid foods. Mother was subsequently placed on multiple involuntary holds based on findings that she was "gravely disabled."

Mother refused to participate fully in an interview with the Department following the minor's detention. She was unwilling to provide family background information, would not address allegations she had made against father, refused to sign a release of medical information, and left before the interview's conclusion. She did admit she has several mental illnesses dating back to 2008, including depression, insomnia, bipolar disorder, psychosis, schizotypal personality disorder, and "possibly" anxiety disorder. She denied having an eating disorder, but admitted her self-image that she was "overweight" might be a result of her psychosis. Mother's medical records revealed she had also been the subject of involuntary holds prior to the minor's birth, and was resistant to treatment and medication for her mental health diagnoses.

Father too suffers from a mental illness–bipolar disorder. Diagnosed in 2005, father ceased taking his prescribed medication in 2010 and also had not seen a psychiatrist "in years." He also acknowledged that mother's mental illnesses inhibit her ability to care for the minor and place the minor at risk of abuse or neglect. He rejected concerns about the minor's low weight, claiming the minor was small at birth, that he was crawling, and that he was being fed rice cereal mixed with breast milk.

In September 2013 mother expressed concern at a lactation clinic that the minor seemed hungry and was not eating well. At that time, the minor weighed 14 pounds 11 ounces, having gained only seven ounces since his appointment two months earlier.[3] The certified health educator at the clinic advised mother to offer the minor three solid feedings a day in addition to breast milk because "[h]e is falling off the growth chart for

---

[3] In contrast, the minor gained two pounds in the first two months he spent with his caretaker following detention.

weight." Based on the health educator's report, a physician asked mother to bring the minor in for a checkup because of his insufficient weight gain; the physician noted that mother was exclusively breastfeeding because she was "emotionally attached to breastfeeding" and wanted to avoid starting any solids or baby foods. The physician advised mother that exclusively breastfeeding was likely insufficient to meet the eight-month-old minor's nutritional needs and his diet should be supplemented with solid foods.

**B.     ICWA Notice**

After finding that the minor "may be" an Indian child based on mother's report, the juvenile court ordered the Department to provide notice of the proceeding to all identified federally recognized tribes. The Department prepared and mailed the requisite notice to the Cherokee tribes, the Bureau of Indian Affairs, the Department of the Interior, and to both parents. The notice provided the name, address, birth date, and place of birth for both parents, and information about various relatives purported to be members of the Cherokee Nation or of Cherokee descent. Two Cherokee tribes responded but neither intervened.

The notice listed mother's birth date as February 2, 1987; this was inconsistent with the Department's detention report, which listed mother's birth date as February 2, 1989. Mother informed the Department the birth date in the detention report was incorrect but never reported the birth date in the notice was incorrect. Rather, the only error mother ever reported with regard to the ICWA notice was in the maternal grandmother's address, which the Department subsequently corrected.

## DISCUSSION

## I

### *Substantial Evidence Supports the Jurisdictional Order*

Mother concedes substantial evidence supports the finding that neither she nor father was able to care for the minor because of their mental illnesses, but she contends

4

there is insufficient evidence the child will suffer future physical harm because he will be voluntarily placed (in the absence of a finding of dependency jurisdiction) with an adequate caretaker. By conflating the separate inquiries of jurisdiction and disposition, mother misconstrues the relevance of the parents' willingness to place the minor with appropriate caretakers. Substantial evidence supports the juvenile court's finding of jurisdiction based on section 300, subdivision (b).

"At the jurisdictional hearing, the court shall first consider *only the question whether the minor is a person described by Section 300*." (§ 355, subd. (a), italics added.) "After hearing the evidence [in support of or in opposition to a jurisdictional petition], the court shall make a finding . . . whether or not the minor is a person described by Section 300 and the specific subdivisions of Section 300 under which the petition is sustained." (§ 356.) Only after the court has found that jurisdiction applies will it "hear evidence on the question of the proper disposition to be made of the child." (§ 358, subd. (a).) It is not until the dispositional stage that the court determines whether and where to place the child. (§ 360 et seq.) Thus, placement of the minor is irrelevant to the court's determination of jurisdiction.[4]

"A jurisdictional finding under section 300, subdivision (b) requires '(1) neglectful conduct by the parent in one of the specified forms;[5] (2) causation; and (3) "serious

---

[4] There is an exception to this general rule in the case of an incarcerated parent, who must be permitted to find an adequate placement for a child before the juvenile court may exercise its jurisdiction. (§ 300, subd. (g); *In re A.A.* (2012) 203 Cal.App.4th 597, 607.)

[5] Section 300, subdivision (b) provides that a child comes within the jurisdiction of the juvenile court where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, or the willful or negligent failure of the child's parent . . . to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent . . . to provide the child with adequate food, clothing, shelter, or

physical harm or illness" to the minor, or a "substantial risk" of such harm or illness.' [Citation.]" (*In re John M.* (2013) 217 Cal.App.4th 410, 418.) "The third element 'effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur).' [Citation.]" (*In re James R.* (2009) 176 Cal.App.4th 129, 135 (*James R.*).) This finding must be supported by a preponderance of the evidence. (§ 355, subd. (a); *In re J.K.* (2009) 174 Cal.App.4th 1426, 1432.) In reviewing the finding on appeal following a claim of insufficient evidence, "we review the evidence most favorably to the court's order–drawing every reasonable inference and resolving all conflicts in favor of the prevailing party–to determine if it is supported by substantial evidence. [Citation.] If it is, we affirm the order even if other evidence supports a contrary conclusion. [Citation.]" (*In re N.M.* (2011) 197 Cal.App.4th 159, 168.)

" '[T]he question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm.' [Citation.]" (*In re S.O.* (2002) 103 Cal.App.4th 453, 461.) "[H]arm may not be presumed from the mere fact of mental illness of a parent." (*In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318.) And while "past conduct may be probative of current conditions" (*James R., supra,* 176 Cal.App.4th at p. 135), it alone is insufficient if there is no reason to believe the alleged conduct will reoccur (*id*. at p. 136). Here, however, there is evidence to support a finding the parents' mental illnesses pose a risk to the minor's safety and welfare.

Both mother and father have long-standing diagnoses of mental illness and appear to be unable or unwilling to treat or manage those illnesses: father has refused for years to treat his bipolar disorder and mother has been serially involuntarily hospitalized as a

---

medical treatment, or by the inability of the parent . . . to provide regular care for the child due to the parent's . . . mental illness, developmental disability, or substance abuse."

6

result of her various mental illnesses.  Additionally, the parents' mental illnesses have placed or will place the infant minor at substantial risk of harm or illness.  Due to her mental illnesses, mother failed to recognize that minor was receiving insufficient nutrients and failed to comply with medical and professional advice to supplement her breast milk with solid foods.  Her mental illnesses also apparently distorted her perception of reality:  prior to detention, she contemplated purchasing a new car seat for the minor (who then weighed less than 15 pounds) because she believed he was "huge" and weighed 30 pounds.  Similarly, father's mental illness prevented him from recognizing that infant minor was gaining weight at an abnormally slow rate.  These facts provide substantial evidence supporting the juvenile court's finding of jurisdiction.

## II

### *ICWA Notice Requirements*

Mother claims the Department failed to comply with the ICWA by listing the incorrect date of birth for mother in the notice sent to the tribes.[6]  However, the portion of the record cited by mother to support this claim does not indicate mother informed the juvenile court of an error in *the ICWA notice*, but in *the Department's detention report*.

"A reviewing court ordinarily will not consider a challenge to a lower court's ruling if an objection could have been, but was not, made below.  [Citation.]  This rule is applicable in dependency matters, and its purpose is to encourage parties to bring errors

---

[6] Notice of a dependency proceeding and the right to intervene must be sent to the tribe or Bureau of Indian Affairs where the minor involved is or may be an Indian child. (25 U.S.C. § 1912; Welf. & Inst. Code, § 224.2; Cal. Rules of Court, rule 5.481(b).)  This notice shall include, if known, the name, date of birth, and place of birth of the child; the tribe in which membership is claimed; and the names, birth dates, and places of birth and death, current and former addresses, and tribal enrollment numbers of the parents, grandparents, and great-grandparents to assist the tribe in determining whether the child is eligible for membership and whether to intervene.  (§ 224.2; 25 C.F.R. § 23.11(a), (d); 44 Fed.Reg. 67588, No. 228, B.5 (Nov. 26, 1979); *In re D. T.* (2003) 113 Cal.App.4th 1449, 1454-1455.)

to the attention of the juvenile court so that they may be corrected. [Citation.]" (*In re Isabella F.* (2014) 226 Cal.App.4th 128, 136.) Moreover, mother failed to provide any citation in her appellate briefing to demonstrate the alleged error in the ICWA notice. Therefore, her claim is forfeited. (*In re S.C.* (2006) 138 Cal.App.4th 396, 406-407.)

## DISPOSITION

The juvenile court's jurisdictional order and judgment of disposition are affirmed.

              RAYE          , P. J.

We concur:

     NICHOLSON     , J.

     HOCH          , J.